RECEIVED

DEC 1 2 2018

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA

# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

### IN RE: ANGELO EFTHIMIATOS,
#### Petitioner, *pro se*

### To the Honorable Chief Judge John Jarvey
### Of the Southern District of Iowa in Case No. 3:13-cr-00015-SMR

## EMERGENCY PETITION FOR DECLARATORY JUDGMENT
## AND INJUNCTIVE RELIEF

Angelo Efthimiatos
Incarcerated Inmate
Petitioner, *pro se*
c/o Nancy Dellamonte
3710 Route 30
Sudbury, VT  05733
914-274-1678

December 11, 2018

1

## INTRODUCTION

The Petitioner *pro se* in this case, Angelo Efthimiatos (hereinafter Petitioner, Mr. Efthimiatos, Angelo, I, me, and my), hereby respectfully submits this Petition for a Declaratory Judgment and Injunctive Relief to Chief Judge John A. Jarvey for the District Court for the Southern District of Iowa to order that the arrest warrant issued by the Honorable Stephanie A. Rose be quashed due to four separate violations of the Speedy Trial Act, and that this Court issue a Declaratory Judgment that Petitioner's rights to Due Process and a Speedy Trial have been violated, and Injunctive Relief to have Petitioner's term of supervised release terminated as Petitioner has been out of prison for 30 months and the last eight months of that time has been spent in maximum security detention facilities in Vermont, solely due to Judge Rose's orders and arrest warrant for what amounts to a simple traffic-ticket type infraction in Vermont of flying without an Airman's Certificate. See Judge Rose Arrest Warrant attached as Exhibit One.

Despite the obvious violations of the Speedy Trial Act with the Arrest Warrant in Iowa and the Indictment in Vermont, the Petitioner was recently tried before a jury in Vermont in a two-day jury trial where he was found guilty of the sole charge of flying without an Airman's Certificate. Despite this fact, and the obvious Double Jeopardy implications proposed by this fact, the Petitioner is being arraigned later this week based on the Iowa Arrest Warrant of April 12 in Vermont. At this time, the Petitioner is worried that he will be sent out to Iowa for a crime that he did not commit, even after the fact that he has been through a jury trial in Vermont on the exact same charges. Moreover, it was revealed during the Petitioner's jury trial that the Government Agents in this case, who were DEA Agents posing as FAA ramp agents, unlawfully seized and searched the Petitioner's plane and did not find any contraband or other passengers, and therefore had to manufacture a fake claim against Petitioner to support the unlawful arrest.

2

The DEA Agents were also caught lying and tampering with witnesses before the trial, along with other serious violations of the law and Due Process. So, Petitioner has been separatd from his family for over eight months now for a non-crime that he did not commit, and the Government attorneys in both Vermont and Iowa have been in constant communication, and both sets of attorneys have violated the clear mandates of the Speedy Trial Act in both districts. Clearly, Venue would not be appropriate in the District of Iowa for a simple traffic violation in the District of Vermont.  Moreover, the Petitioner wishes to bring to the Court's attention that a young flight student was caught red-handed trying to steal a jetliner from the Orlando-Melbourne Airport, yet only received 12 days in jail and a $1,000 fine, and that was for trying to steal a 737 jet.  Furthermore, over 1,000 people in Iowa and New England have died from the Opioid Crisis since these two DEA Agents waited up all night to conduct an unlawful search and seizure in a small Vermont airport claiming they were FAA Agents instead of being out in the field stopping the influx of Opioids.  Therefore, because of Judge Rose's obvious prejudice against Petitioner, Mr. Efthimiatos, on behalf of his family, needs to file this Petition in the hopes that the Chief Judge will take control of this case away from Judge Rose and either grant the Declaratory Judgment and Injunctive Relief asked for in this Petition, or assign it to a different judge to quash the unlawful arrest warrant that was issued on the basis of an unlawful seizure, search, and arrest.

The facts of this case are very clear, and have been stated at the Eighth Circuit and District Court filings in Vermont.  On April 10, 2018, certain DEA Agents were unlawfully tracking and unlawfully seized, detained, and searched Petitioner and his plane without any search warrant or probable cause.  The DEA Agents said that they were doing a simple "ramp check," which is usually done by FAA officials and not DEA Agents, but they searched Angelo's plane and did not find any drugs or other illegalities.  The DEA Agents arrested

3

Angelo, and for lack of anything better, they accused him of flying without an Airman's Certificate. Furthermore, recent documents show that not only did the DEA know that Angelo was flying legitimately, they knew and have known that his licenses have been in good standing since before the arrest, thus making the arrest and this unwarranted and illegal detention all that much worse. See Vermont Arrest Complaint attached as Exhibit Two, and FAA Airman Certificate attached as Exhibit Three.

On April 26th, a Grand Jury returned an indictment based on the exact same charge, and the April 10th Complaint was dismissed. See Exhibit Four, Vermont Indictment. Despite repeated bail requests, Angelo remains in a maximum security detention center waiting for a trial scheduled for early December, which means he will have been incarcerated for eight months before he even has a trial on a non-crime that he did not commit, largely because Judge Rose issued an arrest warrant for conduct which, if illegal, happened in Vermont and not in Iowa and told the prosecutors to keep Angelo in jail. Moreover, it has been discovered that Judge Rose has told the prosecutor in Iowa that she intends to give Angelo another two years for a probation violation that, if it happened, did not happen in Iowa. The prosecutor from Iowa has instructed the prosecutor in Vermont to keep Angelo locked up. Every one of the Founding Fathers must be turning in his grave over that one.

It is clear from prior proceedings in Judge Rose's court that Angelo did not receive a Speedy Trial, Due Process, or the Effective Assistance of Counsel (see Petition for Certificate of Appealability in Case No. 18-2276). In fact, Judge Rose makes the Red Queen in *Alice in Wonderland* look like a softy, and she must be taken off this case. Angelo had to do an emergency landing in Iowa, and after an unlawful seizure and search without a warrant, the DEA discovered his brother Michael's marijuana in a locked suitcase inside a locked plane. For this

terrible crime, Angelo received five years, while his brother Michael (who owned the marijuana) only received two years. Clearly, it was Angelo's great misfortune not to have had an emergency landing in Colorado – or Canada – instead of in Iowa. Since Angelo's release, Judge Rose has prevented him from supporting his disabled wife and special-needs daughter in Vermont by operating his own business of repairing and selling airplanes. See proceedings dated January 17, 2018 in front of Judge Rose, Case No. 13-cr-00015, Dkt. No. 291).

To make matters worse, the DEA Agents that unlawfully seized, detained, searched, and then arrested Angelo knew two things: First, Angelo was not carrying any passengers (or any contraband), so he did not need an Airman's Certificate to fly himself; and Second, his Airman's Certificate was still in force and valid on the FAA Computer. See Exhibit Three, Copy of FAA printout dated April 10, 2018. That means the DEA Agents arrested an innocent person for a non-crime that he did not commit, and these Agents knew he was innocent of flying without an Airman's Certificate. More importantly, Angelo did not know that he was breaking the law, which is the cornerstone of American Jurisprudence. *See, e.g.*, Justice Gorsuch in *United States v. Manatau*, 647 F.3d 1048 (10th Cir. 2011), *citing Morissette v. United States*, 342 U.S. 246 (1952):

> But it is equally true that American criminal law often restricts liability to cases where an intentional choice to do a wrong is present. As Justice Jackson explained, "[t]he contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil.... *Morissette* at 250. The simple fact is intent and knowledge are different things, different as a matter of their plain meaning, different in their treatment in modern American criminal law." *Manatau* at 1051.

The Supreme Court recently stated in *Marinello v. United States*, 138 S.Ct. 1101 (2018):

> "We wrote that we have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that <u>a fair warning should be given to the world in language that the common</u>

5

world will understand, of what the law intends to do if a certain line is passed. *McBoyle v. United States*, 283 U.S. 25, 27 (1931)." *Marinello* at 1106 (emphasis added).

Whereas the defendant in *McBoyle* clearly knew he was doing something wrong by **stealing** an airplane, Justice Holmes said that he did not have enough "fair warning" or "fair notice" that he was breaking the law. In Angelo's case, not only was he unaware that he was crossing any bright line or violating any law, as it turns out, he was not breaking any law at all and the DEA Agents knew it. Despite these overwhelming facts in his favor, Angelo is still being detained in a maximum security detention facility in Vermont without bail because Judge Rose wants him locked up. Certainly, Angelo cannot prepare any defense for his December trial much less his best defense while being detained in maximum security. This is because the Vermont Judge says she cannot quash Judge Rose's arrest warrant, which is why Angelo has come to this Court seeking an Emergency Declaratory Judgment and Injunctive Relief.

## LEGAL STANDARD

Absent relief from this Court, Petitioner could be forced to wait forever in a maximum security prison cell in Vermont for a non-crime that he did not commit, before he can begin to resume his normal life, support his disabled wife and daughter, or seek gainful employment in Vermont. Therefore, this Court should grant Petitioner his justice and quash the arrest warrant issued by Judge Rose in this case for a probation violation that amounts to less than a traffic ticket.

## ISSUES PRESENTED

(1) Whether Petitioner's Constitutional rights to Due Process and a Speedy Trial and to be free from unreasonable searches and seizures have been violated;

(2) Whether there should be a Declaratory Judgment that the District Court for the Southern District of Iowa lacked both jurisdiction and was an improper venue for a claim of flying without an Airman's Certificate in Vermont; and

6

(3) Whether there should be Injunctive Relief to dismiss the Arrest Warrant with prejudice, terminate his Supervised Release as he has been out of prison for more than two years, and order that Judge Rose be removed from further adjudication in this case.

## RELIEF SOUGHT

Through this action, Petitioner seeks a *Declaratory Judgment* issued that Petitioner's constitutional rights to Due Process and a Speedy Trial, among other constitutional rights have all been violated and *Injunctive Relief* to order the Southern District Court of Iowa to dismiss Petitioner's arrest warrant with prejudice and to terminate his supervised release, while removing Judge Rose from further adjudication of any of Petitioner's pending motions before this Court.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action and 28 U.S.C. §1361 (action to compel the performance of a duty), as well as the All Writs Act of 28 U.S.C. §1651, 28 U.S.C. §2201(the declaratory judgment act), and 28 U.S.C. §2202 (further relief). As stated in 28 U.S.C. §1651: "[A]ll courts established by Act of Congress may issue all writs necessary or appropriate *in aid of* their respective jurisdictions and agreeable to the usages and principles of law (emphasis added)." This Court has subject matter jurisdiction because this action arises under the Constitution. A case "arises under" the Constitution if a claim "will be sustained if the Constitution... [is] given one construction and will be defeated if given another." *See, e.g., Bell v. Hood*, 327 U.S. 678, 685 (1946); *Powell v. McCormack*, 395 U.S. 486, 514 (1969). In the landmark case of *Marbury v. Madison*, Justice Marshall wrote:

> [T]he case of *The King v. Baker et al.* states with much precision and explicitness the cases in which the writ may be used. "Whenever," says the very able judge, "there is a right to execute an office, perform a service, or exercise a franchise (more especially if it be a matter of public concern or attended with profit), and a person is kept out of possession, or dispossessed of such right, and has no other specific legal remedy, this

court ought to assist by mandamus, upon reasons of justice, as the writ expresses, and upon reasons of public policy, to preserve peace, order and good government." In the same case, he says, "this writ ought to be used upon all occasions where the law has established no specific remedy, and where in justice and good government there ought to be one." *Marbury v. Madison*, 5 U.S. 137, 168-9 (1803).

The circumstances described in Justice Marshall's opinion, where the law has no specific remedy, and the individual has been "dispossessed" of his rights by a judge who refuses to read his *pro se* filings with no other legal remedy, apply to the situation now before the Court, and weigh in favor of the Court exercising its authority to provide a remedy to preserve "justice and good government." Moreover, as Justice Kennedy has said: "It remains one of the most vital functions of this Court to police with care the separation of the governing powers." *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 468 (1989) (Kennedy, J. concurring). In this case, this Court should use its supervisory powers to issue a Declaratory Judgment to quash Judge Rose's arrest warrant and that Petitioner's constitutional rights to Due Process and a Speedy Trial were violated, and Injunctive Relief is also necessary to order that Petitioner's arrest warrant be dismissed with prejudice and to terminate Petitioner's supervised release, and to have Judge Rose removed from any further proceedings on this case or any future case before this Court.

**ARGUMENT**

## I.    DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF IS THE APPROPRIATE REMEDY HERE

In this case, it is the "only" remedy because Judge Stephanie M. Rose of the Southern District of continues to haunt and ruin Petitioner's life. There is no question that the Petitioner was both a victim of a lack of Due Process and a Speedy Trial the first time he was unlawfully detained in Iowa, but he was also the victim of Ineffective Counsel in being told to plead guilty so he could go home; but instead received a sentence of five years for carrying his brother's marijuana in an airplane. Michael, his brother, only received two years. This is not the sort of justice that the Founders imagined or that this Court should countenance. Absent Injunctive Relief by this Court, Petitioner and his family will be further harmed as he could be shipped to Iowa any day for what amounts to a traffic ticket, and will continue to be unable to help support his disabled wife and special needs child.

While there is no question that venue is improper in this case as nothing that Petitioner is accused of doing (flying a plane in Vermont without an Airman's Certificate), happened in the Southern District of Iowa, *see, e.g., United States v. Cabrales*, 524 U.S. 1 (1998). Similarly, no one knew that there were blatant Speedy Trial violations in his first case until *United States v. Bloate*, 534 F.3d 893 (8th Cir. 2008), *aff'd* 559 U.S. 196 (2010). The Supreme Court has made it very clear that unless and until there is the "concurrence" of an evil meaning mind with an evil act, there is no crime. *See Morissette v. United States*, 342 U.S. 246, 251-52 (1952) ("Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand," quoting Justice Holmes' famous observation that "[e]ven a dog distinguishes between being stumbled over and being kicked."). That has been called the

cornerstone of American jurisprudence. *See Elonis v. United States,* 135 S.Ct. 2001 (2015) *citing Liparota v. United States,* 471 U.S. 419, 427 (1985).

However, in this case the government made up facts that were not true in order to make allegations against Mr. Efthimiatos, which were not against the law. *Morissette* is based on the Supreme Court's opinion in *McBoyle v. United States,* 283 U.S. 25, 27 (1931), which makes clear that you must know you are willfully crossing a "bright line" to break the law before you can be held accountable. Therefore, American criminal jurisprudence requires that you know you are breaking the law, you have the evil intent to cross the bright line, and then you commit the bad act. But, in addition to that, you must also know what punishment you are facing if you do this allegedly bad thing. For example, the Supreme Court recently stated in *Marinello v. United States,* 138 S.Ct. 1101 (2018):

> "We wrote that we have traditionally exercised restraint in assessing the reach of a federal criminal statute, both out of deference to the prerogatives of Congress and out of concern that **a fair warning should be given to the world in language that the common world will understand, of what the law intends to do if a certain line is passed.** *McBoyle v. United States,* 283 U.S. 25, 27 (1931)." *Marinello* at 1106 (emphasis added).

The use of Justice Oliver Wendell Holmes' description of knowing what Society will do to you when the "bright line" of the law is crossed is particularly appropriate for this case. As the defendant in *McBoyle* literally stole an airplane but was charged under the Automobile Act as if he had stolen a car, in this case, Petitioner has been detained in maximum security prisons since April awaiting a delayed trial in December for a "traffic-ticket" type violation of flying without an Airman's Certificate because of an unlawful arrest warrant pending in the district of Iowa since April. See Exhibit One. However, the Petitioner's Airman's Certificate was still in force on the FAA's own computer at the time of his arrest. See Exhibit Three, FAA Proof that Airman's Certificate was still in good standing. Even more upsetting is the fact that Nishal

Sankat, the Canadian student from Trinidad who recently attempted to steal an airliner at the Melbourne-Orlando Airport received a sentence of 12 days – time served – and a fine of $910. Mr. Efthimiatos has a special needs daughter and a disabled wife that need him home now.

Furthermore, the government has demonstrated its "truly neglectful" and "demonstrably lackadaisical attitude" to Petitioner's rights by continuing to violate his Constitutional right to a Speedy Trial, as he will not sit in front of a jury until over eight months after being arrested. *See United States v. Taylor*, 487 U.S. 326, 338 (1988) (court may dismiss with prejudice in light of "truly neglectful attitude on the part of the Government"); *United States v. Giambrone,* 920 F.2d 176, 180 (2d Cir. 1990) (court may dismiss with prejudice in light of prosecution's "demonstrably lackadaisical attitude"). There is actually no valid excludable time on the Docket because there has been no balancing test whatsoever as required by §3161(h)(7) and *United States v. Zedner*, 547 U.S. 489, 507 (2006) ("[n]o such period of delay...shall be excludable...unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial.").

Despite the passage of 180 days since the Complaint, Arrest, and Initial Appearnace, there is no mention on the record of the case for any exclusions of time under §3161(h)(7)(A), and nowhere in the record is there a mention of the *Zedner* "interests of justice" balancing test that is required for any exclusion of time.  There have been no entries on the Iowa docket since the arrest warrant issued in April, resulting in several violations of the Speedy Trial Act under *Bloate v. United States*, 559 U.S. 196 (2010), *United States v. Tinklenberg*, 131 S.Ct. 2007 (2011), and *United States v. Dezeler*, 81 F.3d 86 (8th Cir. 1996), where this Court dismissed an indictment under the Speedy Trial Act for a simple violation of only **one** day.

Mr. Efthimiatos not only qualifies for the quashing of his arrest warrant under the Speedy Trial Act because there has been no indictment within 30 days of arrest, no arraignment, and no trial within 70 days as well as no excludable time on the docket, he also qualifies for the dismissal of his future indictment (if any) under the Fifth Amendment for Due Process violations (see *Betterman v. Montana*, 136 S.Ct. 1609 (2016)) and the Speedy Trial Clause of the Sixth Amendment. *See, e.g., United States v. Pennick*, 2016 WL 4089192 (W.D.N.Y. 2016). "Although unusual, it is possible for a delay that does not violate the [Speedy Trial Act] to run afoul of the Sixth Amendment's guarantee of a speedy trial." *See United States v. Green*, 2018 WL 786185 (W.D.N.Y. 2018), *citing Pennick* at *2, *aff'd* 713 Fed.Appx. 33 (2d Cir. 2017). The standard for both constitutional Speedy Trial Clause violations and Due Process Clause delay violations is *Barker v. Wingo*, 407 U.S. 514 (1972), and as the Second Circuit noted in *Pennick*, the defendant in *Barker* was detained for only ten months while awaiting trial, while Petitioner has already spent six months in prison for a non-crime that he did not knowingly commit.

Mr. Efthimiatos has been held without bail for over six months for what amounts to a minor traffic ticket violation; this is longer than the defendant in *Dezeler* was held. The DEA Agents who unlawfully seized, detained, and unlawfully searched Mr. Efthimiatos's airplane, found no drugs and did not have jurisdiction to do the FAA's job. Mr. Efthimiatos was not flying any passengers either, which means he does not need an Airman's Certificate. But, to cover up their unlawful acts, they created a crime where none existed and arrested Mr. Efthimiatos for flying without his Airman's Certificate. Surprisingly, five months after Mr. Efthimiatos was arrested for a non-crime that he did not knowingly commit, the DEA Agents recently wanted to examine his iPhone. This is clearly unconstitutional based on the Supreme Court's decisions in *Riley v. California*, 134 S. Ct. 2473 (2014), *United States v. Wurie*, 134 S.

Ct. 999 (2014).  The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "If the government violates this constitutional right, the criminal charges must be dismissed." *See, e.g., United States v. Dowdell*, 595 F.3d 50, 60 (1st Cir. 2010), *citing Strunk v. United States*, 412 U.S. 434, 439-40 (1973).

The Speedy Trial guarantee of the Sixth Amendment encompasses more than simply ensuring a speedy "trial."  Rather, it was designed by the Framers, in part, "to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, *and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges*." *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986) (emphasis added). *See, also, United States v. Ewell*, 383 U.S. 116, 120 (1966) (Sixth Amendment guarantee of a speedy trial "is an important safeguard," *to minimize anxiety and concern accompanying public accusation* and to limit the possibilities that long delay *will impair the ability of an accused to defend himself*") (emphasis added).  As the Supreme Court stated in a unanimous decision dismissing the indictment of a convicted killer, Rocky Moore:

> Moreover, prejudice to a defendant caused by delay in bringing him to trial is not confined to the possible prejudice to his defense in those proceedings. Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends. These factors are more serious for some than for others, but they are inevitably present in every case to some extent, for every defendant will either be incarcerated pending trial or on bail subject to substantial restrictions on his liberty. *Moore v. Arizona*, 414 U.S. 25, 27 (1973), *citing United States v. Marion*, 404 U.S. 307, 320-21 (1971).

## II.    THE GOVERNMENT'S VIOLATION OF 18 U.S.C. §3161(j)

Dismissal of an indictment for the Government's violation of §3161(j) is rare, and in fact it has happened in only one case in the Second Circuit, *United States v. Benatta*, 2003 WL 22202371 (W.D.N.Y. 2003), despite the holdings in cases such as *United States v. Lainez-Leiva*, 129 F.3d 89 (2d Cir. 1997) where the Court recognized a Due Process violation, but it was not sufficient enough to dismiss the indictment.   The reason that the dismissal of the indictment in *Benatta* is so important to Angelo's case is that the defendant in *Benatta* was suspected by the FBI of being one of the 9-11 terrorists caught at the Canadian Border, and was held from the time of his indictment (December 12, 2001) to his release to the Immigration Court at the Batavia Federal Detention Facility on April 30, 2002, a delay of only four and a half months. While Angelo, of course, after being held for over six months now, respectfully suggests that the Court would be well within its discretion to dismiss the indictment in this case as the Court did in *Benatta* pursuant to Rule 48(b) of the Fed.R.Crim.P., which provides:

> The court may dismiss an indictment, information, or complaint if unnecessary delay occurs in:
> (1) presenting a charge to a grand jury;
> (2) filing an information against a defendant; or
> (3) bringing a defendant to trial

Rule 48(b) not only allows a court to dismiss an indictment on constitutional grounds, but also where the delay may not be of the constitutional magnitude of this case – a court can still dismiss an indictment pursuant to Rule 48(b).  *See Pollard v. United States*, 352 U.S. 354, 361 n. 7 (1957) ((noting that Rule 48(b) provides for enforcement of the Sixth Amendment's speedy-trial right), but it also restates the court's inherent power to dismiss an indictment for lack of prosecution where the delay is not of a constitutional magnitude, *see* Fed.R.Crim.P. 48(b)

advisory committee note (pointing out that the rule restates 'inherent power of the court to dismiss a case for want of prosecution').

Similarly, this is the rare case where both sections 18 U.S.C. §3161(j) and §3164 came into play. Section 3164 was violated because the Government required Angelo to be imprisoned over what amounts to a traffic ticket while awaiting his trial rather than receive a furlough under CFR 570.33, at a local Halfway House, or even better: his home. The Government also knowingly postponed Angelo's trial just so the Government could exercise such pointless tasks like requesting a search warrant for Angelo's phone. But, the Due Process Delay bullet that the Government cannot possibly dodge is 18 U.S.C. §3161(j)(1), (2), and (3), which provide as follows:

> (j)(1) If the attorney for the government knows that a person charged with an offense is serving a term of imprisonment in any penal institution, he shall promptly –
>
> (B) cause a detainer to be filed with the person having custody of the prisoner and request him to so advise the prisoner and to advise the prisoner of his right to demand trial.
>
> 2. If the person having custody of such prisoner receives a detainer, he shall promptly advise the prisoner of the charge and of the prisoner's right to demand trial. If at any time thereafter the prisoner informs the person having custody that he does demand trial, such person shall cause notice to that effect to be sent promptly to the attorney for the government who caused the detainer to be filed.
>
> 3. Upon receipt of such notice, the attorney for the government shall promptly seek to obtain the presence of the prisoner for trial.

Therefore, Angelo's arrest warrant in this case must be immediately dismissed.

## III.   THE ARREST WARRANT MUST BE DISMISSED FOR VIOLATIONS OF THE SPEEDY TRIAL ACT

The Speedy Trial Act provides that the trial of an indicted defendant is to commence within 70 days from the date of filing of the indictment. §3161(c)(1).  From the time of arrest, the Government only has 30 days to file an indictment and have an appearance before a magistrate; none of this has happened on the Iowa docket. The Act provides that various periods of time may be excluded from the 70-day calculation. §3161(h).  But, none of those "excludable" time periods are listed on the Iowa docket.   Section 3162(a)(2) provides that a defendant not brought to trial within the time allowed by §3161(c) is entitled to have the indictment dismissed. The court may dismiss with prejudice or without. §3162(a)(2).   The Speedy Trial Act sets out factors to be considered by the court in choosing between the two: the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution  on  the  administration  of  this  chapter  and  on  the  administration  of  justice. §3162(a)(2). Accordingly, the court's exercise of its discretion in selecting a dismissal with prejudice  or  a  dismissal  without  prejudice  must  be  reviewed  with  reference  to  the  court's consideration of these factors.

To permit appropriate appellate review, the district court should explicate as clearly as possible the bases for its conclusions as to each factor. *See id.* This Court may properly take into account a demonstrably lackadaisical attitude on the part of the government attorney in charge of the case or a pattern of dilatory practices on the part of the United States Attorney's office in the district in question. *See id.* at 338-39.  In this case, Judge Rose's arrest warrant was issued on April 12, and yet there has been no indictment, arraignment, or trial in Iowa, nor has the Government in Iowa helped with the Vermont case.   Therefore, this Court should issue the Declaratory Judgment and quash Judge Rose's arrest warrant.

## IV.   THE ARREST WARRANT SHOULD BE DISMISSED WITH PREJUDICE

This Court should quash the arrest warrant **with** prejudice because the threefold violations of the Speedy Trial Act along with the violation of the Speedy Trial Clause and the Due Process Clause of the Constitution cannot be ignored, and *Bloate* cites *Dezeler* that the only remedy is dismissal of Mr. Efthimiatos's arrest warrant. Clearly the crime here is not serious, the delay is all the Government's fault, and the prejudice to Petitioner and his family is palpable. Furthermore, "No such period of delay...shall be excludable...unless the court sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial", see *United States v. Zedner*, 547 U.S. 489, 507 (2006) and §3161(h)(7)(A). There is nothing on Petitioner's docket but a six month old arrest warrant. In *Dezeler*, this Court felt compelled to dismiss an indictment under the Speedy Trial Act for a simple violation of only **one** day. In Mr. Efthimiatos's case, he has at least two separate Speedy Trial Act violations that amount to over 70 days each by any standard, along with violations of the Indictment and Arraignment rules of the Speedy Trial Act. Mr. Efthimiatos's arrest warrant **must be** dismissed due to the law under *Bloate*, *United States v. Tinklenberg*, 131 S.Ct. 2007 (2011), and *Dezeler*, and it should be dismissed with prejudice. As the Second Circuit stated in *United States v. Giambrone*, 920 F.2d 176 (2d Cir. 1990):

> "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'" *Id.* at 180-81.

The STA violations in this case are *not* a close call. However, whether the period is 71 days, 100 days, or 30 days for the indictment, *any* STA violation requires dismissal of the arrest

warrant. To determine whether to dismiss this case with or without prejudice, "the court shall consider, among others, each of the following factors: (1) the seriousness of the offense; (2) the facts and circumstances of the case which led to the dismissal; and (3) the impact of a []prosecution on the administration of this chapter and on the administration of justice." 18 U.S.C. §3162(a)(1). The Supreme Court has further directed courts to consider the prejudice suffered by the defendant as a result of the delay. *See United States v. Taylor*, 487 U.S. 326, 334 (1988) ("[T]here is little doubt that Congress intended this factor to be relevant for a district court's consideration."); *accord United States v. Wilson*, 11 F.3d 346, 352 (2d Cir. 1993); *United States v. Kiszewski*, 877 F.2d 210, 213 (2d Cir. 1989).

The punishment for flying without an Airman's Certificate, if that were even true, would likely have been for less time than Petitioner has already spent in detention in Vermont because of Judge Rose's orders to keep him locked up. The reasons for the delay rest squarely on the shoulders of the government. There is nothing to indicate that Defendant or his counsel played a part in holding up the process. Whether the BOP or even a court itself causes the delay, the outcome is effectively the same.   There is only one federal government, and its actions unfortunately affect prosecutors. Where the violation of the STA is attributable to the prosecution, or even the court, "the allowance of []prosecution of defendant[ ] for the charged offense[ ] would completely negate the beneficent purposes intended to be accomplished by the Act in insuring timely trial of defendants, especially those incarcerated pending trial as w[as] th[is] defendant[ ]." In consideration of the above, this case should be dismissed **with** prejudice. *See Dezeler* (one day), and *Huete-Sandoval*, where the indictment was dismissed for just one STA violation of only 16 days.

In determining whether an STA violation has occurred, "[a]n inquiring court must follow a two-step process. First, the court must do the basic mathematics and determine the aggregate time elapsed awaiting trial. Second, it must determine how many days should be excluded from that ultimate sum." The Court should dismiss this case with prejudice in light of the Speedy Trial Act violations. The government's has demonstrated its "truly neglectful" and "demonstrably lackadaisical attitude" to Mr. Efthimiatos's rights. *See United States v. Taylor*, 487 U.S. 326, 338 (1988) (court may dismiss with prejudice in light of "truly neglectful attitude on the part of the Government"); *Giambrone* at 180 (court may dismiss with prejudice in light of prosecution's "demonstrably lackadaisical attitude"). There is actually no excludable time on the Iowa or Vermont Dockets, because no one did the balancing test required by §3161(h)(7) and *Zedner*. This disregard of Mr. Efthimiatos's straightforward speedy trial rights reveals, at a minimum, a "truly neglectful attitude" on the part of the government that warrants dismissal with prejudice. "The responsibility for pursuing a prosecution lies entirely with the government." *United States v. Bufalino*, 683 F.2d 639, 646 (2d Cir. 1982). Where a defendant is detained on the government's request (or in this case by Judge Rose's request), its obligations under the Speedy Trial Act should be strictly enforced. It is plain that the government in Iowa as well as Vermont has deprioritized its responsibilities under the Act. Dismissal with prejudice is necessary to ensure that the government solves this problem. "It is self-evident that dismissal with prejudice always sends a stronger message than dismissal without prejudice, and is more likely to induce salutary changes in procedures, reducing pretrial delays." *Taylor* at 342.

The Government in Vermont says that it is following orders from the Government in Iowa and has argued that the delay has not resulted in actual prejudice to Petitioner. This ignores what the government has ignored all along: that Petitioner has been unlawfully detained and now

tried based on the government's request from Iowa. When a defendant has been incarcerated for this long, whatever advantage the government might have derived by the lack of actual prejudice is outweighed by the ***presumed*** suffering and disruption that the delay and detention caused the defendant and the erosion of public confidence in the criminal justice process that such delay has caused. *See Giambrone* at 180-81 (presumed prejudice to incarcerated defendant "weighs in favor of dismissal with prejudice").

## V.    THIS CASE SHOULD BE ASSIGNED TO A JUDGE IN VERMONT

Perhaps the most disturbing aspect of this miscarriage of justice is that Angelo and his wife have heard from Angelo's Court-Appointed Attorney that AUSA Cowles, the Government prosecutor from Vermont, has been having continual conversations and discussions concerning Angelo with AUSA Cronk, the Government prosecutor from Iowa. According to AUSA Cronk, Judge Rose is already planning on sentencing Angelo to two years for the probation violation, even though nothing happened in Iowa in this case.  If all of the Government's allegations are true, which clearly they are not, DEA Agents unlawfully seized and detained Angelo and then when they did not find any drugs, they arrested him for flying without a valid Airman's Certificate.  Without any thought of Due Process, AUSA Cronk told AUSA Cowles not to release Angelo on bail due to Judge Rose's desire to punish and remove him from his family.

The fact that AUSA Cowles has communicated to Angelo's attorney that Judge Rose is already planning on condemning him to prison for two additional years for what amounts to a traffic ticket makes clear that her perceived prejudice and bias are beyond the pale.  Without a hearing or a trial, and without any representation, Judge Rose has already pre-judged an innocent family man and made a decision that will truly negatively impact Angelo's family.  AUSA Cowles in Vermont says she is not allowed to reduce the charges to a misdemeanor because

Judge Rose will not let her do so, so Judge Rose is effectively running the Vermont case from Iowa, and the Vermont Judge and AUSA Cowles are doing whatever Judge Rose and AUSA Cronk tell them to do. So, Judge Rose got her wish to have Angelo convicted of a felony so that she can deliver yet another over-long sentence and further punish his family for a victimless non-crime that amounts to a traffic ticket in Vermont, and has nothing to do with Iowa. Not only does this violate the Venue Clause and the Due Process Clause of the Constitution, it violates the law of the Eighth Circuit. *See, e.g., United States v. Cabrales*, 115 F.3d 621 (8th Cir. 1997), where Missouri was not the proper venue for Vicki Cabrales, even though that is where she lived and dealt drugs, but she was accused of money laundering, which she did in Florida. If Angelo really did break the law, which is clearly debatable, he did it in Vermont and not in Iowa, so not only should Judge Rose's Arrest Warrant be quashed, she should be taken off Angelo's case immediately and be instructed to have nothing more to do with Angelo's probation.

Judge Rose must be removed from this case pursuant to 28 U.S.C. §455(b) to avoid the appearance of a lack of impartiality, as 28 U.S.C. §455(a) provides: "Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The statute requires that "courts must not only be, but *must seem to be*, free of bias or prejudice." *In re United States*, 158 F.3d 26, 30 (1st Cir. 1998) (emphasis added). For recusal to be required, "[t]he judge does not have to be *subjectively* biased or prejudiced, so long as he *appears* to be so." *Liteky v. United States*, 510 U.S. 540, 553 n.2 (1994) (emphasis in original).

As this Court is well aware, in the case of the infamous Whitey Bulger, the First Circuit removed Judge Stearns due to his prior position as Chief of the Criminal Division of the Justice Department, saying:

"The point under §455(a) is not his actual state of mind at a particular time, but the existence of facts that would prompt a reasonable question in the mind of a well-informed person about the judge's capacity for impartiality in the course of the trial and its preliminaries....[W]e are nonetheless bound to conclude that it is clear that a reasonable person might question the judge's ability to preserve impartiality through the course of this prosecution and the likely ruling...." *In re Bulger,* 710 F.3d 42, 46, 49 (1st Cir. 2013).

In considering ordering recusal, this Court must "take the objective view of an informed outsider." *In re United States*, 441 F.3d 44, 67 (1st Cir. 2006). The task in determining whether to recuse "requires . . . that there be no reasonable question, in any informed person's mind, as to the impartiality of the judge." *Id.* Where recusal is a close question, the Court of Appeals for the First Circuit has directed District Judges that "the balance tips in favor of recusal." *In re Boston's Children First*, 244 F.3d 164, 167 (1st Cir. 2001). In this case, there is no possibility that Judge Rose can avoid the appearance of partiality. In *XYZ Corp. v. United States*, 348 F.3d 16, 26 (1st Cir. 2003), Judge Selya of the First Circuit wrote:

"Many years ago Justice Holmes warned that those who deal with the government must turn square corners. *Rock Island, Ark. & La. R.R. Co. v. United States*, 254 U.S. 141, 143 (1920). That advice cuts both ways: those who deal with the government have a right to expect fair treatment in return. The principal that the government must turn square corners in dealing with its constituents is dispositive here."

Harvard Law Review wrote the following in support of this common-sense principal:

"[T]he trial judge may have become so involved with the decision that it will be difficult for him to review it objectively. Nothing in the legislative history suggests that "court" refers to a specific judge, and the procedural advantages...are available whether or not the trial judge presides at the hearing." *Developments in the Law-Federal Habeas Corpus*, 83 Harv L Rev 1038, 1206-1208 (1970).

In plain English, Petitioner believes that the Harvard Law Review was telling us what we all know to be true: that judges are human too. All humans have personal prejudices and sometimes make mistakes based on those prejudices, and few of us humans want our mistakes exposed to the Public. It is therefore not fair to ask judges to second-guess themselves publically,

especially while a Petitioner like Angelo languishes in prison.  Judge Rose has made a lot of mistakes in Angelo's case, and is clearly prejudiced against him.  As Judge Aldrich wrote in *Halliday v. United States*, 380 F.2d 270, 274 (1st Cir. 1967): "Moreover, it is not unimportant that judicial decision-making not only be fair, but that it so appear to all eyes."

This principle applies to this case especially since Angelo has been languishing in prison for over 6 months now due to Judge Rose's desire to keep him incarcerated without bail for what amounts to a traffic ticket, and has now been tried and found guilty. The public obloquy in the local newspapers, and suffering that Angelo and his family have endured under the surreptitious will of Judge Rose these past six months cannot be overstated.  Not only should this Court order her to recuse herself, but as no indictment has been brought within 30 days as required by the Speedy Trial Act, the Arrest Warrant in Iowa should be quashed with prejudice and Angelo's supervised release period immediately terminated.

## CONCLUSION

For the reasons set forth above, this Court should issue a Declaratory Judgment to the United States District Court for the Southern District of Iowa ordering it to dismiss Petitioner's arrest warrant with prejudice, and that Petitioner's rights to a Speedy Trial and Due Process have been violated, and that the Petitioner's period of supervised release be terminated immediately, and that Judge Rose be removed from any further adjudication of Petitioner's case in this Court, as well as any other Injunctive Relief this Court deems appropriate.

Respectfully submitted

/s/ Angelo Efthimiatos
Angelo Efthimiatos
Incarcerated Inmate
Petitioner, *pro se*
c/o Nancy Dellamonte
3710 Route 30
Sudbury, VT  05733
914-274-1678

ORIGIN ID:EHTA    (860) 408-7000
JOSEPH CASTAGNO

WESTCOTT PLAZA
35 TOWER LANE
AVON, CT 06001
UNITED STATES US

SHIP DATE: 11DEC18
ACTWGT: 1.00 LB
CAD: 5508595/INET4040

BILL SENDER

TO  JOHN S. COURTER, CLERK OF COURT
    UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF IOWA
    123 EAST WALNUT STREET, SUITE 300
    DES MOINES IA 50309
    (563) 884-7607         REF:
    INV:
    PO:              DEPT:



FedEx
Express

WED - 12 DEC 3:00P
STANDARD OVERNIGHT

TRK#  7739 4395 0939
0201

XH DSMA          50309
          IA-US    DSM






RECEIVED

DEC 12 2018

CLERK OF DISTRICT COURT
SOUTHERN DISTRICT OF IOWA